IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENYAN SELMON,

                Petitioner,                Case No. 3:07 CV 3405

    -vs-

                                        MEMORANDUM OPINION

JULIUS C. WILSON,N, INC.,

                Respondent.

KATZ, J.

        This matter is before the Court on the Report and Recommendation ("R & R") of Magistrate Judge Armstrong (Doc. 12) and Petitioner Kenyan Selmon's ("Petitioner") objections to the R & R (Doc. 15), without response by Respondent Julius Wilson ("Respondent"). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir. 1981), this Court has made a *de novo* determination of those of the Magistrate Judge's findings to which Petitioner objects.

**I. Background**

        Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), in a proceeding instituted by any application for a writ of habeas corpus by a person in custody pursuant to a judgment in state court, the factual findings made by a state court in the direct appeal process shall be presumed to be correct. *Keith v. Mitchell*, 455 F.3d 662, 666 (6th Cir. 2006) (citing 28 U.S.C. § 2254(e)(1)).

        The Court adopts the Magistrate Judge's recounting of the background, which is as follows:

> On the evening of November 28, 2005, Petitioner and his girlfriend, Ouida Birdow, were returning home from an evening out when they became involved in a verbal altercation. The verbal argument ultimately became physical with Petitioner striking Birdow in the face, causing two black eyes. Petitioner also shoved Birdow to the ground, which result in her breaking her clavicle. Birdow's thirteen year old

nephew, Travon Smith, witnessed the argument and ensuing physical altercation from his bedroom window and called 9-1-1. Birdow also called 9-1-1. The fire department rescue squad and the police were dispatched to Birdow's residence.

When the police and paramedics arrived, they found Birdow in a bedroom, crying and holding her shoulder. Officer David Minard attempted to speak to Birdow, however, she was reluctant to tell him about the incident. Based upon his experience, Officer Minard filled out and signed a domestic violence packet, charging Petitioner with domestic violence. The officer then placed Petitioner under arrest.

Birdow did not cooperate with the paramedics who attempted to treat her. Due to the severity of Birdow's injuries, the paramedics transported her to MedCentral Hospital. Birdow subsequently told one of the paramedics she was hit in the face with a fist and her shoulder was injured when she was thrown to the ground. At the hospital, Birdow underwent x-rays of her shoulder and head. While waiting for the results of the x-ray, she asked to speak with Officer Minard. Birdow made a statement to the officer, implicating Petitioner as the person who caused her injuries. She also reported to the emergency room doctor her chief complaint was that she had been beaten. Birdow waited several hours in the emergency room, but left the hospital before learning the results of the xrays. A member of the hospital staff contacted Birdow and informed her she had a broken collar bone. Birdow returned to the emergency room where her arm was placed in a splint and she received pain medication. After Officer Minard learned Birdow had a broken collar bone, he filed a charge of felonious assault against Petitioner.

Petitioner called Birdow from jail on December 4, 2005. During the phone conversation, he instructed Birdow to tell the judge she had been in a fight with a woman named Jennifer with whom Petitioner was having an affair. Petitioner specifically told her to say he had nothing to do with her injuries. Four days later, on December 8, 2005, Birdow testified under oath at Petitioner's preliminary hearing. Birdow testified as Petitioner had instructed her, stating she became involved in a fight with another woman, during which she slipped and hurt her shoulder. Birdow explained her injuries occurred because she was drunk. Birdow admitted she and Petitioner had an argument that night. Officer Minard also testified at the preliminary hearing regarding the statement Birdow gave him at the hospital.

Following the preliminary hearing, Petitioner called Birdow from the jail, enraged she had given a statement to the police while at the hospital. He was also angry about her testimony they had argued the night she was injured. Petitioner called Birdow a rat, and told her she "burned him" by making the statement to the police. Petitioner placed over 170 calls to Birdow. During these phone conversations, Petitioner acknowledged beating Birdow, telling her mouth was responsible for her receiving the black eyes.

> Petitioner pressured Birdow to drop the charges against him, lie to the court, or not show up for the trial. Petitioner tried to make Birdow feel guilty for causing him to be in jail and facing a potential of ten years in prison. When those attempts were unsuccessful, Petitioner threatened Birdow, raging he would make her pay for everything she did.
>
> Based upon those telephone calls, the state filed additional charges against Petitioner. The Richland County Grand Jury indicted Petitioner on one count of aiding and abiding perjury, two counts of intimidation and two counts of retaliation. The cases were consolidated and scheduled for trial on April 13, 2006. Prior to trial, Petitioner filed a motion in limine and motion for redaction of audio tapes of Petitioner's phone calls to Birdow from the jail. Via Judgment Entry filed April 13, 2006, the trial court sustained Petitioner's motion in limine relating to statements made by Birdow to Officer Minard. The trial court also instructed the State to redact all references in the audio tapes of Petitioner's criminality.
> During the trial, the state played portions of the phone calls. One excerpt contained two comments by Petitioner in which he refers to returning to the penitentiary and to his prior convictions. Petitioner objected, and the trial court found the references were minor and the state was making ongoing efforts to redact the tapes. Petitioner refused the trial court's offer of a curative instruction.
>
> In another phone call played for the jury, Petitioner mentions Mansfield Correctional Institution as well as the fact he had been in jail "enough". Defense counsel brought this unredacted reference to the trial court's attention and requested a mistrial. The trial court denied the motion, finding the state had made a good faith effort to redact the tapes. The trial court also stated Petitioner knew the phone calls were recorded; therefore, he voluntarily put these remarks before the jury.

(Doc. 12 at 2-4).

**II. Jurisdiction**

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that he or she is in custody in violation of the Constitution or laws or treaties of the United States. *Leslie v. Randle*, 296 F.3d 518, 521 (6th Cir. 2002) (citing 28 U.S.C. § 2254). The "in custody" requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a

remedy for severe restraints on individual liberty. *Id.* (citing *Hensley v. Mun. Ct.*, 93 S. Ct. 1571, 1574-75 (1973)).

Petitioner satisfies both prongs of the requirements for habeas jurisdiction. Petitioner was convicted in the Court of Common Pleas of Richland County, Ohio, and is currently incarcerated at the Richland Correctional Institution in Mansfield, Ohio. Petitioner is therefore "in custody" for purposes of habeas jurisdiction. Petitioner alleges that he has been deprived of rights guaranteed him under the Sixth and Fourteenth Amendments. Accordingly, the Magistrate Judge was correct in determining that this Court has jurisdiction pursuant to 28 U.S.C. § 2254.

**III. Standard of Review**

28 U.S.C. §636(b)(1) requires a district court to "make a *de novo* determination of those portions of the report . . . or recommendations [of a magistrate judge] to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

"In determining whether to issue a habeas writ, the standards set forth in the [AEDPA] govern the district court's review of a state court decision." *French v. Jones*, 332 F.3d 430, 435 (6th Cir. 2003) (citing 28 U.S.C. § 2241). Under the AEDPA, 28 U.S.C § 2254(d):

> An application for a writ of habeas corpus...shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A federal habeas court may grant the writ under the "contrary to" clause if the state court decides a case differently than the Supreme Court on materially indistinguishable facts, or if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law. *French*, 332 F.3d at 436 (citing *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). A federal habeas court may grant the writ under the "unreasonable application" clause if the state court identified the correct governing legal principle, but unreasonably applied that principle to the facts of a particular prisoner's case. *Id.*

**III. Discussion**

The Magistrate Judge's R & R recommends that the Court deny Petitioner's Petition for Writ of Habeas Corpus. (Doc. 12). Petitioner objects, indicating that: (1) no rational trier of fact could have found him guilty of retaliation beyond a reasonable doubt; (2) he was denied due process of law and a fair trial due to the trial court's failure to grant a mistrial or curative instruction; (3) appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness; and (4) appellate counsel was ineffective for failing to raise an argument entitling petitioner to a remand hearing. (Doc. 15).

**A. Retaliation Claims**

Petitioner argues that "no rational trier of fact could have found him guilty of retaliation beyond a reasonable doubt, because the state failed to prove that [Birdow] filed or prosecuted charges of retaliation." (Doc. 15). The Magistrate Judge's R & R found that Birdow did in fact "prosecute" the retaliation charge, instigating the charges by participating in the legal process. (Doc. 12). Petitioner's claim attacks the sufficiency of the evidence provided to support his conviction.

In determining whether the evidence in the trial court was sufficient to support a conviction, a federal court should ask, "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979) (citing *Johnson v. Louisiana*, 92 S. Ct. 1620, 1624-25 (1972)).  Further, a federal court will not generally re-assess the credibility of a witness.  *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

Under Ohio Rev. Code § 2921.05(B): "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against the victim of a crime because the victim filed or prosecuted criminal charges."  Petitioner contends that the prosecutor failed to demonstrate that the victim, Birdow, filed or prosecuted criminal charges in this case, and therefore an element of retaliation was not proven beyond a reasonable doubt.  (Doc. 15).

Both the Fifth District Court of Appeals of Ohio and the Magistrate Judge attempted to construe the word "prosecute".  *See State v. Selmon*, No. 06-CA-52, 2007 WL 926478, at *4 (Ohio Ct. App. Mar. 28, 2007); (Doc. 12).

A prosecuting witness is defined as "[a] person who files the complaint that triggers a criminal prosecution and whose testimony the prosecution usu[ally] relies on to secure a conviction."  BLACK'S LAW DICTIONARY (8th ed. 2004).  Birdow called 9-1-1 after her altercation with Petitioner.  (Doc. 12).  Additionally, Birdow's statements to Officer Minard and the emergency room doctor were relied upon by the prosecution to secure conviction.  *See Selmon*, 2007 WL 926478, at *4.

Accordingly, the Court finds that Birdow may accurately be considered a prosecuting witness with respect to Petitioner's retaliation charge, and a rational trier of fact could have found

6

the essential elements of the retaliation charge beyond a reasonable doubt.  Thus, the Court adopts the Magistrate Judge's recommendation.

### B.  Due Process of Law Claims

Petitioner argues that the trial court should have granted him a mistrial or at least a curative instruction as a result of the admission of evidence referring to his past convictions and incarceration.  (Doc. 15).  The Magistrate Judge concluded that "[t]he trial court did not abuse its discretion by failing to declare a mistrial or give a curative instruction."  (Doc. 12).

#### 1. Failure to Grant Mistrial

Petitioner suggests that exposing jurors to inadmissible evidence proved so prejudicial as to warrant the granting of a mistrial.  (Doc. 15).  Petitioner cites a number of cases, indicating that the inadmissible evidence had an "inflammatory effect" and a highly "prejudicial effect" thus calling for the granting of a mistrial.

"When reviewing the trial decision of a federal district court, the standard of review for a decision not to grant a mistrial is abuse of discretion."  *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (citing *United States v. Chambers*, 944 F.2d 1253, 1263 (6th Cir. 1991)).  Habeas review of a state trial court decision involves a narrow review of due process rather than the broad review that a federal appellate court possesses in regards to its own trial court.  *Id.* (citing *Donnelly v. DeChristoforo*, 94 S. Ct. 1868, 1871 (1974)).

 In *Zuern*, the Sixth Circuit listed five factors to consider in determining whether the granting of a mistrial was warranted:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

336 F.3d at 485. The remarks in question were reasonable and were not unsolicited; the government used the remarks in order to demonstrate Petitioner's intimidation of Birdow. *Selmon*, 2007 WL 926478, at *4. Although the trial court instructed the prosecution to redact portions of the taped conversations, Petitioner fails to demonstrate that the government exhibited any bad faith in failing to redact the inadmissible statements. Additionally, the remarks represented only a small portion of the evidence proffered by the government; several hours of conversations between Birdow and Petitioner were presented to the jury. *Id.* Accordingly, the trial court did not abuse its discretion in failing to grant a mistrial. Thus, the Court adopts the Magistrate Judge's recommendation.

### 2. Failure to Give a Curative Instruction

Alternatively, Petitioner argues that even if the trial court did not abuse its discretion in failing to grant a mistrial, the trial court should have at least provided a curative instruction in response to the inadmissible evidence heard by the jury. (Doc. 15). Petitioner suggests that "the trial judge should have given the curative instruction over counsel's desire not to do so." *Id.* The Magistrate Judge concluded that the recordings heard by the jury were not prejudicial, and therefore the trial judge was not compelled to offer a curative instruction. (Doc. 12).

"[T]he decision whether to give a curative instruction lies within the sound discretion of the trial court, and will not be reversed on appeal unless the decision is unreasonable, arbitrary, or unconscionable." *State v. Hartman*, No. CA98-06-040, 1999 WL 188145, at *2 (Ohio Ct. App. Apr. 5, 1999). Petitioner's objection offers a conclusory statement that "the inadmissible evidence was in fact prejudicial." (Doc. 15). Petitioner fails to argue how the trial court's decision to not give a curative instruction *sua sponte* was unreasonable, arbitrary, or unconscionable, and therefore Petitioner's argument lacks merit. Furthermore, because the Court has determined that

8

the admission of the recording itself was not prejudicial, the trial judge was not compelled to give a curative instruction regarding its admission. Thus, the Court adopts the Magistrate Judge's recommendation.

### C. Ineffective Appellate Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to impeach a key witness and failing to object to prosecutorial misconduct. (Doc. 15). Additionally, Petitioner contends that appellate counsel was ineffective for failing to raise an argument that would purportedly entitle him to a remand hearing. (Doc. 12). Petitioner concedes that the Magistrate Judge's standard regarding effective counsel is correct. *Id.* As the Magistrate Judge stated:

> To prevail on an ineffective assistance of counsel claim, a petitioner must show not only that performance of counsel was deficient but also that this deficient performance prejudiced the defense. *Byrd v. Collins*, 209 F. 3d 486, 519 (6th Cir. 2000) *cert. denied*, 121 S. Ct. 786 (2001) (*citing Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984)). A petitioner must show that counsel's errors were so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. *Strickland*, 104 S. Ct. at 2064. A strong presumption exists that trial counsel's conduct or omissions are within the wide range of reasonable professional assistance. *Id*. at 2065. Therefore, a court reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." *Id*. at 2066.

(Doc. 12). The Magistrate Judge concluded that appellate counsel was not ineffective in failing to raise trial counsel's ineffectiveness. (Doc. 12).

#### 1. Failure to Impeach a Key Witness

Petitioner argues that trial counsel was ineffective for failing to impeach Officer Minard, or at least challenge his expertise in domestic violence cases. (Doc. 12). According to the record, Petitioner's trial counsel did verify Officer Minard's expertise in the area, and apparently

9

determined that attempting to impeach Minard would not be part of sound strategy. (Doc. 8, pg. 624-25). Officer Minard re-stated that he was a ten-year veteran and that "over the years" he had handled about 50-75 domestic violence calls per month. The Court finds that trial counsel's actions were not outside the range of professionally competent assistance, and therefore Petitioner's argument lacks merit. Thus, the Court adopts the Magistrate Judge's recommendation.

### 2. Failure to Object to Prosecutorial Misconduct

Petitioner argues that trial counsel's failure to object to the prosecution's use of several allegedly inadmissible taped conversations constituted flagrant violations of the effective counsel standard. (Doc. 15). Trial counsel attempted to prohibit the prosecution from using the taped conversations both before and during trial. (Doc. 7, Ex. 3). Petitioner argues that trial counsel should have objected after every statement that may have contained a reference to previous convictions or incarcerations. (Doc. 15). The Court finds that trial counsel attempted to have these statements removed on numerous occasions, and that such action was not outside the range of professionally competent assistance. Therefore, Petitioner's objection is without merit. Thus, the Court adopts the Magistrate Judge's recommendation.

### 3. Failure to Raise *Foster*

Petitioner contends that appellate counsel was ineffective for failing to raise an argument emerging from *State v. Foster*, 109 Ohio St. 3d 1 (2006), which would allegedly entitle him to a remand hearing. (Doc. 15). Petitioner further argues that the ruling that the Ohio Supreme Court issued in *Foster* cannot withstand constitutional scrutiny, and therefore the United States Supreme Court decision of *Cunningham v. California*, 127 S. Ct. 856 (2007), is controlling. (Doc. 15).

In *Foster*, the Ohio Supreme Court found several provisions of Ohio's felony sentencing statute unconstitutional, and therefore excised those portions of the statute. 109 Ohio St. 3d at 31. The Ohio Supreme Court remedied the unconstitutionality by granting trial courts "full discretion to impose a prison sentence within the statutory range." *Id*. at 25-30. Petitioner argues that the trial court was required to impose the minimum sentence absent unconstitutional judicial fact-finding, and therefore impermissibly increased his sentence beyond the minimum. (Doc. 15). The *Foster* court eliminated the requirement of the imposition of minimum sentences, and left the decision to the trial courts. 109 Ohio St. 3d at 25; see also *Collins v. Brunsman*, No. 1:08cv217, 2009 WL 1675919, at *5 (S.D. Ohio June 12, 2009).

Furthermore, "[t]he Ohio Supreme Court limited its holding in *Foster* to cases pending on direct review, and held those defendants whose cases were pending on direct review were only entitled to a new sentencing hearing." *Blackwell v. Warden*, Lebanon Corr. Inst., No. 1:08cv158, 2009 WL 764638, at *3 (S.D. Ohio Mar 20, 2009). Therefore, it cannot be said that appellate counsel was ineffective for failing to raise the *Foster* argument; Petitioner's case was not on direct review at the time *Foster* was decided, and therefore not raising an argument that would necessarily fail was within the range of professionally competent assistance. Thus, the Court adopts the Magistrate Judge's recommendation.

**IV. Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge's R & R is adopted in full. (Doc. 12). Petitioner's Petition for Writ of Habeas Corpus is denied. (Doc. 1).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE